**Bennie Lloyd HARRELL, Jr.,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 720–85.**

Court of Criminal Appeals of Texas,
En Banc.

Dec. 17, 1986.

William D. Engle, Jr., San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. and Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

The San Antonio Court of Appeals reversed appellant's conviction for driving while intoxicated, holding that the test results and interpretation thereof from appellant's breath test should not have been admitted at trial. The Court held that the State failed to show a part of the intoxilyzer equipment was individually certified as required by the Breath Alcohol Testing Regulations (hereinafter "regulations") promulgated by the Texas Department of Public Safety. See V.A.C.S. Article 6701*l*–5 and Tex. Dept. of Public Safety, 37 Tex.Admin.Code § 19.1–19.6 (Shepard's 1982). *Harrell v. State,* 693 S.W.2d 693 (Tex.App.—San Antonio 1985). The State contends that the Court of Appeals has interpreted the regulations incorrectly and that the evidence shows compliance with the regulations. The State also contends that appellant did not preserve the issue for review. We granted the State's petition for review to consider both issues.

We turn first to the preservation of error contention. Officer Lin Manford testified that he arrested appellant on April 29, 1983, for driving while intoxicated. He

said he drove appellant to the Live Oak Police Department and administered a breath test to appellant on the intoxilyzer. Manford stated that he was certified as an operator of the intoxilyzer. He described the operation of the machine and his procedure in operating it on appellant's breath sample. He testified that appellant's breath test on the intoxilyzer produced a digital and a printed reading of ".13."

George Allen McDougall, Jr., testified that he was certified by the Texas Department of Public Safety as an operator and supervisor of the intoxilyzer in Bexar County. He understood the scientific principles upon which the intoxilyzer operated, and he was trained to calibrate, maintain and repair the instrument. McDougall stated that he had checked the intoxilyzer some days prior to appellant's test and found that it was operating correctly. He had also checked it the day after appellant's test and found that it was operating correctly. In his opinion the intoxilyzer was operating properly on April 29.

The prosecutor then asked McDougall what the correlation was between a ".13 reading of an intoxilyzer print-out and the individual's blood alcohol reading at that same time and place." Appellant objected to the "question and answer that the question calls for because there's not been a predicate established by the State conforming with Section 2 of the Chemical Breath Testing Regulations as promulgated by the State of Texas, Article 6701*l*–5 as well as *Hill v. State* and those cases following." The court overruled the objection. McDougall proceeded to explain the principles behind the ".13" measurement, how it was calculated, and what it meant. After questioning McDougall extensively about the reference simulator,[1] and proving that this piece of equipment was not *individually*

certified, but was certified by type, appellant made a motion to suppress the intoxilyzer results already admitted. He also requested that the judge instruct the jury to disregard all testimony concerning the intoxilyzer. The judge took the motion under consideration and overruled it the next day.

The State argues that because appellant did not object to Manford's testimony that the reading from appellant's breath test was ".13," appellant did not preserve the ground for review. Appellant answers, inter alia, that he did not need not object until the expert, McDougall, testified to the certification and supervision of the operator, the operation of the intoxilyzer, and the interpretation of the result. We agree with appellant.

■ As appellant points out, the predicate for the admissibility of a breath test was enumerated in *Hill v. State*, 158 Tex. Cr.R. 313, 256 S.W.2d 93 (1953) and reaffirmed in subsequent cases. *French v. State*, 484 S.W.2d 716 (Tex.Cr.App.1972); *Bumpus v. State*, 509 S.W.2d 359 (Tex.Cr.App.1974); *Palafox v. State*, 509 S.W.2d 846 (Tex.Cr.App.1974); *Cody v. State*, 548 S.W.2d 401 (Tex.Cr.App.1977). The predicate was set out in reference to the breathalyzer machine, but is, with the exception of the first prong, equally applicable to the intoxilyzer. The requirements are: (1) the use of properly compounded chemicals; (2) the existence of periodic supervision over the machine and operation by one who understands scientific theory of the machine; and (3) proof of the result of the test by a witness or witnesses qualified to translate and interpret such result so as to eliminate hearsay. The intoxilyzer does not use chemicals so the first prong of the predicate is not really applicable and must be

1. The reference simulator is attached to the intoxilyzer and contains a reference sample of a mixture of alcohol and water which is mixed by the technical supervisor to a specific, known concentration. This sample of a known concentration is put into the simulator and analyzed by the intoxilyzer. The intoxilyzer analyzes the sample and gives a reading as to the alcohol concentration. The operator compares that reading to the known concentration and, thus, checks to be sure the intoxilyzer is working correctly and accurately. McDougall testified that he made up the reference sample to a different concentration each week. He said that running the reference sample verified the intoxilyzer was operating properly. He also said that a valid test could not be administered on the intoxilyzer without the use of the simulator.

modified due to the nature of the machine. The intoxilyzer is "checked" through use of the reference sample. McDougall testified that a valid test could not be run without also running the reference sample through the intoxilyzer. He stated that he prepared the reference sample used to check the proper functioning of the machine on April 29, and that it matched the reading measured by the intoxilyzer. The reference sample was properly used to check the functioning of the intoxilyzer. Because the reference sample is so important to the intoxilyzer in Texas, a showing of proper use of a reference sample satisfies the first prong of the predicate, as modified due to the nature of the instrument. The State used Manford and McDougall to meet the other two prongs of the predicate.

■ We agree with appellant that he need not have objected to Manford's testimony of the reading and print-out from appellant's breath sample in order to preserve his contention. Manford testified only to his operation of the intoxilyzer and his observations therefrom, including the print-out and reading of ".13." He did not interpret the number and stated that he was not qualified to explain and interpret the number. Nor was he qualified to testify about the certification of the intoxilyzer itself. The State had not yet offered enough evidence as a predicate under *Hill,* supra, to explain the ".13" or the regulations. Therefore, appellant's objection which pertained to the certification of parts of the intoxilyzer could not have been testified to or answered by Manford. An objection at this point on those grounds would be meaningless.

McDougall was the expert concerning the certification of the intoxilyzer. His testimony satisfied the last two prongs of the test established in *Hill,* supra. Appellant's objection prior to McDougall's testimony interpreting the results of the equipment and explaining the blood alcohol content was timely. Appellant specified to the court that he objected because the intoxilyzer was not certified according to the regulations. Appellant objected when the State attempted to explain to the jury what

the reading on the intoxilyzer meant. He timely contested the interpretation from the only witness qualified to interpret the result and qualified to testify about the certification of the equipment used to achieve that result. We find that appellant's objection was timely, specific, and preserved his contention for review.

The Court of Appeals agreed with appellant that the equipment used in administering the breath test could not be used for evidential purposes and that the results therefrom should not have been admitted because the State had failed to show that the equipment was certified in accordance with the provisions of the Chemical Breath Testing Regulations promulgated by the Texas Department of Public Safety. See Tex. Dept. of Public Safety, 37 Tex.Admin, Code §§ 19.2–19.6 (Shepard's 1982). Thus, the Court held the State did not establish the proper predicate for the introduction of such results. The Court of Appeals found introduction of such was reversible error because the jury was instructed on the presumption of intoxication under V.A.C.S. Art. 6701*l*–5, § 3(a), (currently found in art. 6701*l*–5, § 3(j). Specifically, the Court of Appeals held,

> that the regulations mandate certification as to model of breath test instruments and allied equipment and an individual certification of breath test instruments and allied equipment before they can be finally certified by the Scientific Director of the Texas Department of Public Safety for use in administering chemical breath tests for evidential purposes. Further, a failure to show a final certification of any piece of equipment, be it an instrument or allied equipment, used in breath testing for evidential purposes is a failure to show that the testing was performed under certification as contemplated by the regulations and is not admissible for court purposes in this state. *See id.* § 19.6(e).

*Harrell v. State,* 693 S.W.2d 693, 696 (Tex. App.–San Antonio 1985).

V.A.C.S. Article 6701*l*–5, § 3(b) in effect at the time of appellant's arrest and trial stated:

Chemical analysis of the person's breath, to be considered valid under the provisions of this section, must be performed according to methods approved by the Texas Department of Public Safety and by an individual possessing a valid certificate issued by the Texas Department of Public Safety for this purpose. The Texas Department of Public Safety is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analysis, and to issue certificates certifying such fact. These certificates shall be subject to termination or revocation, for cause, at the discretion of the Texas Department of Public Safety.

Pursuant to this provision the Texas Department of Public Safety promulgated regulations for "Chemical Breath Testing," Tex. Dept. of Public Safety, 37 Tex.Admin. Code §§ 19.1–19.6. These regulations deal with certification and approval of instruments, equipment, operators, techniques, and programs for breath alcohol testing in relation to law enforcement and evidence for use in court. In the instant case there is no question that the testing method and operator's administration of the test was proper under the regulations and under the case law specifying the requisite predicate for admission of the test and results. Also, there is no dispute that the supervision and maintenance by a certified technical supervisor was in accordance with the regulations. The issue is whether or not the regulations require a piece of equipment called a reference simulator to be *individually* certified, rather than certified by model or class.

The pertinent portion of the regulations are as follows:

Sec. 19.1 Chemical Breath Test Instrument Certification:

(a) All breath testing instruments and allied equipment to be used for evidentiary purposes in the State of Texas must have the approval of and certified by the Scientific Director, Alcohol testing Program, Texas Department of Public Safety (hereinafter referred to as Scientific Director).

(1) The Scientific Director will make available a list of instruments and allied equipment certified for use in the State of Texas.

(2) If application is made for approval of an instrument or any allied equipment not on the approved list, The Scientific Director shall examine and evaluate the instrument or other item to determine whether or not it meets the certifying criteria.

(b) All breath testing instruments, in order to be approved, must meet the following criteria. (These conform to the guidelines set forth by the U.S. Department of Transportation, National Highway Traffic Safety Administration.)

(1) The quantity of breath analyzed for its alcohol content shall be established only by direct volumetric measurement or by collection and analysis of a fixed breath volume.

(2) Breath specimens collected for analysis shall be essentially alveolar in composition.

(3) The instrument shall be able to analyze a suitable reference sample, such as air equilibrated with reference solution of known alcohol content at a known temperature, the result of which analysis must agree with the reference sample value within the limits of $= 0.01\%$ W/V, or such limits as set by the Scientific Director.

(4) The instrumental analysis of breath shall sufficiently, accurately reflect the breath alcohol concentration for use in converting to blood alcohol concentration.

(5) The specificity of the procedure shall be adequate and appropriate for the analyses of breath specimes for the determination of alcohol concentration in traffic law enforcement.

(6) Any other tests deemed necessary by the Scientific Director to correctly and adequately evaluate the instrument to give correct results in routine chemical breath testing.

(c) Allied equipment shall meet any criteria deemed necessary by the Scientific

Director and operate properly and adequately for the function it is designed to perform.

(d) After breath testing instruments and allied equipment are certified, no modifications of these will be made without written approval of the Scientific Director.

(e) If it is determined by the Scientific Director or a designated representative that a specific instrument or a specific piece of allied equipment is unreliable and unserviceable, certification will be withdrawn.

Sec. 19.6 Explanation of Terms and Actions

\* \* \* \* \* \*

(e) *Certification*: Refers to meeting and maintaining the requirements set forth in 'The Regulations.' Under the provisions of 'The Regulations,' certification is granted individually to: (1) operators, (2) technical supervisors, (3) breath test instruments and allied equipment, (4) techniques of testing (breath test programs, agencies), and (5) courses of training. Certificates are issued for operators, Technical Supervisors and certified breath test programs, other certifications are handled by list or letter. Certifications are granted only by the Scientific Director when requirements of certification have been met. Cancellation, denial, suspension, revocation, or inactivation and certification is made by the Scientific Director or under authority of the Scientific Director. All breath testing for evidential purposes must be performed under certification in order to be admissible for court purposes.

\* \* \* \* \* \*

(h) *Instruments and allied equipment*: Refers to any physical equipment or supplies which are used in breath testing. Certification of instruments and allied equipment is only in conjunction with breath testing for evidential purposes. Instruments and allied equipment include but are not limited to the device which collects the breath and measures the alcohol content of the blood or breath, the reference sample devices, expendable supplies, and facility for security and storage. *Certification of equipment will be made by model or class by the Office of the Scientific Director, however, each piece of equipment must individually meet the requirements for certification stated in 'The Regulations' or designated by the Scientific Director prior to its final certification.* Once certified, no changes, deletions, or modifications can be made without the written consent of the Scientific Director obtained through the Technical supervisor.[2]

McDougall, the technical supervisor, testified that the simulator could be considered "allied equipment," as the term is used in the regulations.

The Court of Appeals held that the reference simulator must be individually certified just as the instrument itself must be. The Court did not specifically explain which provisions of the regulations they relied upon for their holding. It appears that the Court relied upon the definitional paragraphs set out previously and titled "Certification" and "Instruments and allied equipment." § 19.6(e) & (h). The definition of certification states that "under the provision of 'The Regulations,' certification is granted individually to: ... (3) breath test instruments and allied equipment ..." The definitional paragraph for instruments and allied equipment states, "Certification of equipment will be made by model or class by the Office of the Scientific Director; however, each piece of equipment must *individually* meet the requirements for certification *stated in 'The Regulations'* or designated by the Scientific Di-

---

**2.** Sec. 19.6(h) has been amended to delete the language requiring "each piece of equipment" to individually meet certifications stated in The Regulations ... This section now states that *"each breath alcohol testing instrument* must individually meet the requirements for certification stated in the regulations...." (emphasis added). Thus, the issue presented in the instant case would not arise under the present wording.

rector prior to its final certification." (emphasis added).

We note first that these are both *definitional* provisions, although for some reason they also seem to contain substantive requirements for certification. The definitional provisions refer back to "The Regulations" and should not be read in isolation from the regulations which specify the particular requirements for certification. Section 19.1 is the portion of the regulations that specifies the requirements for certification. This section separates instruments and allied equipment into distinct subheadings and enumerates different certification requirements for each. Necessarily, Section 19.6(h), which first requires certification by model and class and then requires each piece of equipment to individually meet the requirements for certification "stated in 'The Regulations,'" must be read with reference to these regulations. More precisely, when an instrument, such as the intoxilyzer, is involved, reference must be made to § 19.1(b) for the requirements for individual certification, in addition to certification by model and class. When allied equipment is at issue the reference must be to § 19.1(c), the section which specifically deals with certification requirements for allied equipment, in addition to certification by model and class. To do otherwise and simply base an interpretation solely on the definitional paragraphs' seeming substantive requirements without reference to the regulations is incorrect under the very language of § 19.6(h) and renders the enumerated certification requirements useless at best and a nullity at worst. The regulations must be read as a whole.

Reading the regulations as a whole, we see that allied equipment must be certified by model and class under § 19.6(h) as well as meet the certification requirements stated in the regulations for allied equipment, namely, "[a]llied equipment shall meet any criteria deemed necessary by the Scientific Director and operate properly and adequately for the function it is designed to perform." The regulations require certification by model and class, § 19.6(h), and operation properly and adequately for the function for which it was designed, § 19.-1(c). There are no additional requirements stated in the regulations for certification of allied equipment. The regulations do not specify individual certification for allied equipment. Rather "any criteria deemed necessary by the Scientific Director" are required. Those criteria are only specified as certification by model and class. Therefore, reference back from § 19.6(h) to § 19.1(c) in regard to allied equipment, demonstrates that allied equipment individually need only be certified by model and class.

■ In the instant case, McDougall testified that the reference simulator, which is considered allied equipment, was certified by type or model. In addition he testified that it operated properly for the function it was designed to perform. This testimony is sufficient to meet the requirements of the regulations. McDougall's testimony concerning the breath test and his interpretation of that test was properly admitted.

The judgment of the Court of Appeals is reversed and the judgment of the trial court sustaining the conviction, is affirmed.

ONION, P.J., concurs in the result.

TEAGUE, J., believing that the San Antonio Court of Appeals correctly disposed of the issue that is before this Court, respectfully dissents to the majority opinion's contrary holding.

CLINTON, Judge, concurring.

Though I agree with the result reached by the majority opinion, it seems to me the opinion gets caught up in what it calls "definitional provisions" that "refer back to 'The Regulations,'" creating an ensuing confusion.

The comments that follow are directed solely to "allied equipment," more particularly to a "reference simulator."

A given is that all such equipment "to be used for evidentiary purposes in the State of Texas must have the approval of and certified by the Scientific Director, Alcohol Testing Program, Texas Department of Public Safety." Regulations, Sec. 19.1(a).

Unlike specific criteria that all breath testing instruments must meet for approval and certification, *id.*, Sec. 19.1(b), allied equipment need satisfy only "any criteria deemed necessary by the Scientific Director and operate properly and adequately for the function it is designed to perform." *Id.*, 19.1(c). So much for *criteria* for certification of allied equipment.

Actual certification is covered in *id.*, Sec. 19.6, and that the section is titled "Explanation of Terms and Actions" indicates its content is more than merely "definitional." The only remaining question is whether that section explains how the Scientific Director must manifest the fact that he has approved and certified allied equipment. I believe it clearly does.

While *id.*, Sec. 19.6(e) does provide "certification is granted *individually* to [*inter alia*] (3) breath test instruments and allied equipment," certificates for other than operators, technical supervisors and breath test programs are "handled by list or letter." Again, certification is granted only "when requirements of certification have been met." Thus each reference simulator found to satisfy "criteria deemed necessary by the Scientific Director," is somehow to be identified "by list or letter," but no regulation has yet said how.

Section 19.6(h), however, provides: "Certification of equipment will be made by *model or class* . . ., however, each piece of equipment must *individually* meet the requirements for certification . . ."

Thus does the Scientific Director manifest the fact that he has approved and certified a particular reference simulator by identifying its model or class in a list or letter, presumably made available to affected parties.

On that basis I concur in the judgment of the Court.