Scott Matthews FLEMING, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–88–359–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 6, 1989.

Discretionary Review Refused
Oct. 25, 1989.

George H. Tyson, Jr., Colin B. Amann, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Appellant Scott Matthews Fleming was charged by information with driving while intoxicated. He entered a plea of nolo contendere, was found guilty, and was assessed punishment of ten days confinement, probated for a period of 90 days, and a fine of $100.00. In three points of error, he challenges the denial of his motion to suppress the intoxilyzer results because the exhaust hose on the intoxilyzer was rerouted without the written consent of the Scientific Director of the Alcohol Testing Program. Appellant asserts that the rerouting of the exhaust hose constituted an unlawful modification in violation of Texas Department of Public Safety regulations. We affirm the trial court's judgment.

Appellant was arrested for suspicion of driving while intoxicated, taken to the Houston Police Department, videotaped, and administered a breath test. The intoxilyzer which tested appellant's breath was designed with an exhaust hose which extended outside the cabinet of the instrument. The exhaust hose served to purge the alcohol from the intoxilyzer's chamber to the atmosphere to avoid an accumulation of excess air. Sometime in 1981, a technical supervisor with the Alcohol Testing Program suspected that police officers were tampering with the intoxilyzer by plugging the exhaust hose, thus creating the possibility of a higher alcohol reading during breath tests. The exhaust hose was therefore rerouted so that it no longer extended outside the cabinet but instead exhausted the cumulated breath samples to the interior of the intoxilyzer cabinet and out the back vent. The rerouting did not cause an alteration of the intoxilyzer's internal function, operation, or procedure of analysis. The hose itself was not altered in any manner. Testimony reflects that the intoxilyzer was accurate both before and after the rerouting and appellant's test.

In his first point of error, appellant asserts that the trial court erred in denying his motion to suppress the intoxilyzer results because an alleged violation of the Texas Breath Alcohol Testing Regulations had occurred. These regulations were promulgated by the Texas Department of Public Safety under the authority granted in article 6701*l*–5, Sec. 3, Tex.Rev.Civ.Stat. Ann. (Vernon Supp.1989). The legislature authorized the Texas Department of Public Safety to establish regulations approving satisfactory techniques or methods to analyze a specimen of a person's breath, to ascertain the qualifications and competence of individuals to conduct such analysis, and to issue certificates certifying such fact.

Appellant maintains that prior to a 1986 amendment, the regulations required any modifications of the intoxilyzer equip-

ment to be conducted pursuant to the written consent of the Scientific Director. Appellant asserts the 1981 rerouting of the exhaust hose from the outside to the inside of the cabinet constituted a modification not conducted with the written consent of the Scientific Director causing loss of the intoxilyzer's certification. He argues that because the "modification" was not conducted pursuant to the regulations, the intoxilyzer lost its certification and was never re-certified by the Scientific Director. Therefore, the 1986 amendment to the regulations, which omitted the necessity for written approval for any modifications, did not affect the particular intoxilyzer involved in his breath test as the machine was never re-certified after its 1981 modification. Thus, following appellant's argument, the test results of the uncertified intoxilyzer could not be admitted into evidence.

■ The current Breath Alcohol Testing Regulations do not require advance written approval of the Scientific Director prior to a modification. The regulations were amended in 1986 to remove the written approval requirement. The superceded regulations, therefore, have no application to appellant's case because they were not in effect at the time of appellant's intoxilyzer test or at the time of trial. *See Harrell v. State*, 725 S.W.2d 208, 212 n. 2 (Tex.Crim.App.1986); *Eckhoff v. Director of Revenue*, 745 S.W.2d 815, 816–18 (Mo. App.1988). A statute can operate retrospectively to change the procedures whereby it is determined whether a person has committed a criminal act. *Chalin v. State*, 645 S.W.2d 265, 271 (Tex.Crim.App. [Panel Op.] 1982). Administrative rules and regulations are subject to application of the same doctrines. *See Texas Liquor Control Board v. Attic Club*, 457 S.W.2d 41, 45 (Tex.1970). In this case, the procedural components of the intoxilyzer test included the technique and method, the qualification of the person administering the test, and the nature and description of the equipment and allied devices. *Eckhoff v. Director of Revenue*, 745 S.W.2d 815, 817 (Mo.App.1988). The provision which required advance written consent for modifi-

cations was procedural only and affected no substantive right which appellant may invoke to exclude the intoxilyzer test result from admission into evidence. Therefore, absent an express intent to give deleted portions of the amended regulations further effect, the 1981 regulations did not apply to appellant's case.

Especially is this so as the amended regulation did not affect the accuracy of the test results nor the certification of this particular intoxilyzer. Evidence adduced at the hearing on the motion to suppress revealed that the intoxilyzer had not been modified and had not lost its certification. The rerouting of the exhaust hose did not constitute a modification which affected the internal function, operation, or procedure of analysis of the intoxilyzer. The Scientific Director testified through an affidavit that the rerouting of the exhaust hose was considered an exhaust system option which did not alter the internal function, operation, or procedure of analysis and therefore did not constitute a modification of the instrument within the meaning of the Texas Breath Alcohol Testing Regulations in effect at the time of the rerouting. The Scientific Director further testified that the certification of the particular intoxilyzer had been continuous since the date of the original certification and that there had been no cause to suspend, revoke, or withdraw the certification. He testified that he orally recommended the rerouting as it had no effect upon the intoxilyzer's reliability, function, or analysis. Further, he testified that the intent of the regulations in effect at the time of the rerouting was that written consent for modification need only be obtained when a modification was initiated by a technical supervisor instead of initiated by the Scientific Director as was done in the instant case. He testified that even if a modification had occurred, a modification done without written consent would not result in an automatic suspension, revocation, or withdrawal of the particular intoxilyzer's certification. Rather, the loss of an intoxilyzer certification could only result from affirmative action by the Scientific Director or his

designated representative which action was not taken in this case.

The regulations reflect that affirmative action by the Scientific Director was necessary to revoke, suspend, or withdraw certification. § 19.7, Texas Breath Alcohol Testing Regulations. They also specify that once an intoxilyzer is certified by list or letter, the list shall be evidence that the agency possesses certified instruments and approved allied equipment. The record indicates that the particular intoxilyzer was certified by list or letter at the time of appellant's arrest and at trial. *See* § 19.7(d)(3), Texas Breath Alcohol Testing Regulations. Further, the State presented expert testimony of this certification. We overrule appellant's first point of error.

■ In his second and third points of error, appellant contends that the trial court erred in denying his motion to suppress the intoxilyzer results because the rerouting of the exhaust hose constituted a modification in violation of the regulations in effect at the time of the alleged modification. Appellant asserts that if a modification occurred which constituted loss of certification, then the failure to re-certify the intoxilyzer would still extend to the present even though the regulations had been amended.

Appellant asserts that the word modification should be defined as "a small alteration, adjustment, or limitation." His argument seems to be that such a definition should be applied as a matter of law to invalidate the test results in the present case, but only after this Court views certain exhibits depicting the rerouting of the exhaust hose. Implicit in this argument, however, is that a fact question exists as to whether a modification occurred because submitted evidence must be referenced.

In *Harrell v. State*, 725 S.W.2d 208, 209–13 (Tex.Crim.App.1986), the determination of whether a modification had occurred was a fact question. *Harrell* sets forth the requisite predicate for admission of intoxilyzer results into evidence; that is, proper use of a reference sample, existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine, and proof of the test result by a witness qualified to translate and interpret such result so as to eliminate hearsay. *Harrell*, 725 S.W.2d at 209–10. *Harrell* further discusses the proof necessary to prove the equipment's individual certification so as to meet the requirements of the regulations. In the instant case, the State offered expert testimony as to each requisite which appellant failed to controvert.

Appellant relies upon the Pennsylvania case of *Commonwealth v. McGinnis*, 511 Pa. 520, 515 A.2d 847 (1986), for the proposition that results from a modified testing device are inadmissible. However, *McGinnis* is distinguishable from appellant's case. In *McGinnis*, it was uncontroverted that the *modified* testing unit was *not* approved by the Pennsylvania Department of Health, whereas the determination of whether a modification occurred and whether the unit was certified is in issue here. Appellant failed to controvert the State's expert testimony that no modification had occurred and that certification for the intoxilyzer was continuous.

Moreover, appellant admits that "[i]t is the Scientific Director who is responsible for determining whether a particular breath testing apparatus should be certified." In this case, testimony and exhibits reflect that the Scientific Director determined that the particular intoxilyzer was certified and had never lost its certification.

A technical supervisor for the Breath Testing Program within the Houston Police Department also testified that the rerouting of the intoxilyzer to the inside of the cabinet was not a modification. The officer testified that the rerouting of the breath hose was neither a technique, method, nor program and therefore did not need to be approved or certified by the Scientific Director. Further, this particular intoxilyzer had never been decertified, nor had its certification been revoked, suspended, or deactivated. The certification had been continuous since 1981.

Appellant did not offer any expert testimony that the rerouting of the exhaust hose constituted a modification which af-

fected the reliability or accuracy of the instrument. Nor did appellant offer expert testimony that such rerouting was in fact a modification. In contravention to appellant's position, the State offered affidavit testimony of two experts who both maintained that the rerouting of the hose was not a modification and did not affect the accuracy or reliability of the instrument. Thus, the intoxilyzer never lost its certification. The State fulfilled the predicate requirements for the admission of the test results into evidence. *See Harrell*, 725 S.W.2d 209–10. Therefore, appellant's points of error two and three are overruled.

We affirm the judgment of the trial court.