**The STATE of Texas, Appellant,**

v.

**Ronald Edward KRAGER, Appellee.**

**No. 04–90–00190–CR.**

Court of Appeals of Texas,
San Antonio.

May 29, 1991.

Rehearing Denied July 9, 1991.

Ron Mendoza, Wallace B. Jefferson, Groce, Locke & Hebdon, San Antonio, for appellant.

Mark Stevens, San Antonio, for appellee.

Before BUTTS, CARR and GARCIA, JJ.

OPINION

CARR, Justice.

This is a State's appeal from an order suppressing evidence. Appellee filed a motion in limine in this driving while intoxicated case complaining that the Intoxilyzer result was not admissible because the San Antonio police department's breath testing program was not properly certified according to the Texas Breath Alcohol Testing Regulations. Appellee argued that the police department should have reapplied for program certification in 1981 when the Intoxilyzer replaced the Breathalyzer in the program. The trial court treated the motion as a motion to suppress the test result. After hearing evidence and argument on the motion at a pretrial hearing, the trial court granted the motion, concluding that

because there was no reapplication for certification in 1981 the San Antonio police department's breath testing program was not properly certified and appellee's test result was inadmissible. The State has appealed from the trial court's order pursuant to TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(5) (Vernon Supp.1991).

In two points of error the State contends: (1) The trial court erred in granting the appellee's motion to suppress evidence because the breath testing program administered by the San Antonio police department is a properly certified breath testing program.

(2) The trial court erred in granting the appellee's motion to suppress evidence because the trial court is an improper forum for attacking the validity of the breath testing regulations.

Because the second point of error is jurisdictional, we address that issue first.

■ The State argues that TEX.REV. CIV.STAT. art. 6252–13a, § 12 (Vernon Supp.1991), requires that a determination of the invalidity of any state agency rule promulgated under the Administrative Procedure and Texas Register Act be made in an action for declaratory judgment in a district court of Travis County. However, appellee did not challenge the validity or applicability of an administrative regulation. Rather, appellee contended that the breath testing program of the San Antonio police department was not in compliance with the pertinent regulations. The trial court had jurisdiction to act on appellee's motion. The State's second point of error is overruled.

The ultimate issue under the first point of error is whether the Texas Department of Public Safety's Breath Alcohol Testing Regulations require that an agency reapply for certification of its breath testing program when that agency changes the type of breath testing equipment used in the program. The facts developed in the hearing below are undisputed, and the trial

court's ruling was solely based on an interpretation of the regulations.

Appellee was arrested for driving while intoxicated on March 5, 1988, and was administered a DWI breath test. An information was filed alleging the offense of driving while intoxicated. The trial court conducted an evidentiary hearing on appellee's motion in limine, treated as a motion to suppress.

State trooper Leo Curtis Stewart, a certified breath test operator, testified that he administered the Intoxilyzer test to appellee in the San Antonio police department Intoxilyzer room and that he followed all the appropriate Department of Public Safety procedures in conducting the test. The result was 0.16. Stewart used an Intoxilyzer Model 4011 AS–A 92.[1]

George Alan McDougall, Jr., testified that he is the Bexar County Technical Supervisor for the Scientific Director of the Texas Department of Public Safety. The San Antonio police department's breath testing program was certified on January 21, 1970. The application for the program certification showed that the instrument to be used was the Breathalyzer Model 900. In 1981, the San Antonio police department changed over from the Breathalyzer to the Intoxilyzer. The two instruments use different techniques. The Intoxilyzer was certified by the Scientific Director on May 11, 1981, however, there was no reapplication for certification of the breath testing program when the police department replaced the Breathalyzer with the Intoxilyzer.

The trial court noted that the Breathalyzer and Intoxilyzer were based on completely different theories and that there were vast differences between the instruments. As we previously noted, the court held that pursuant to 37 TEX.ADMIN.CODE § 19.3(b) a new application should have been made in 1981 when the Intoxilyzer replaced the Breathalyzer. The court concluded that the San Antonio police department's breath testing program was not

---

1. At the hearing, the breath testing instrument was referred to as a Model 4000, Model 4011 AS–A, and Model 4011 AS–A 92.

**452**

properly certified, and that appellee's test result was inadmissible.

The Breath Alcohol Testing Regulations, Tex. Dep't Public Safety, 37 TEX.ADMIN. CODE §§ 19.1–.7 [2], in effect at the time appellee was administered a breath test provided in part:

§ 19.3 Certification of Techniques, Methods, and Programs.

\*    \*    \*    \*    \*    \*

(b) Prior to initiating a breath alcohol testing program, an agency or laboratory shall submit an application to the Scientific Director for approval. The application shall show the brand and/or model of the instrument and allied equipment to be used and contain a resume of the technique to be followed. An on-site inspection shall be made by the Scientific Director or a designated representative to assure compliance with the provisions of the application.

■ Appellee contends § 19.3(b) required the San Antonio police department to reapply for certification of its breath alcohol testing program when the Intoxilyzer was substituted in 1981 for the Breathalyzer in order that the application would show the brand and/or model of the instrument used and a resume of the technique to be followed when using the Intoxilyzer. The State maintains that the regulations do not require a reapplication for certification of the breath testing program and that the test results are admissible so long as the proper predicate is established under *Harrell v. State*, 725 S.W.2d 208 (Tex.Crim. App.1986).

In *Harrell* the court was faced with an issue of whether the defendant preserved error by making a timely objection to the admissibility of an Intoxilyzer result. The court stated that the predicate for the admissibility of an Intoxilyzer test is (1) the proper use of a reference sample; (2) the existence of periodic supervision over the machine and operation by one who understands scientific theory of the machine; and (3) proof of the result of the test by a

witness or witnesses qualified to translate and interpret such result so as to eliminate hearsay. *Id.* at 209–210.

The State asserts that the test result in the instant case is admissible since the predicate of *Harrell* was met. The State points out that Trooper Stewart was certified as an operator and that he conducted the test according to the Department of Public Safety Regulations. Technical Supervisor McDougall periodically supervised the Intoxilyzer, the instrument was certified and was working properly, and the reference sample was proper.

However, TEX.REV.CIV.STAT. art. 6701*l*–5, § 3(b), provides:

Analysis of a specimen of the person's breath, to be considered valid under the provisions of this section, must be performed according to rules of the Texas Department of Public Safety and by an individual possessing a valid certificate issued by the Texas Department of Public Safety for this purpose. The Texas Department of Public Safety is authorized to establish rules approving satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analysis, and to issue certificates certifying such fact. These certificates shall be subject to termination or revocation, for cause, at the discretion of the Texas Department of Public Safety.

"Breath specimens taken at the request or order of a peace officer must be taken and analysis made under such conditions as may be prescribed by the Texas Department of Public Safety, and by such persons as the Texas Department of Public Safety has certified as qualified." Art. 6701*l*–5, § 3(c). The regulations state, "All breath alcohol testing techniques, methods, and programs to be used for evidentiary purposes must have the approval of and be certified by the Scientific Director." 37 TEX.ADMIN.CODE § 19.3(a). "All breath alcohol testing for evidential purposes must be performed under certification in order to be admissible for court purposes." § 19.7(d)(2).

**2.** As amended effective September 8, 1986. 11 Tex.Reg. 3800 (1986).

Therefore, in the instant case, the State was required to show that the breath alcohol testing program was properly certified in order to meet the third prong of *Harrell.* *Cf. Harrell,* 725 S.W.2d at 210 (certification of the equipment falls under the third prong).

The regulations do not explicitly require an agency to reapply for program certification when a new brand or model of instrument is introduced into the program. We must determine whether the regulations implicitly require such reapplication.

The regulations provide that the application shall show the brand and/or model of the instrument. § 19.3(b). However, in the context of § 19.3(b) and § 19.7(e), the application pertains to the inauguration of an agency's breath testing program. In order for appellee's interpretation of the regulations to prevail, that an agency must reapply for certification whenever a new brand or model of instrument is used, the introduction of such a new brand or model of instrument into a program must be viewed as an initiation of an entirely new program, because an agency is only required to submit an application before initiating a breath alcohol testing program. § 19.3(b).

The definitional portion of the regulations provides:

§ 19.7 Explanation of Terms and Actions.

\*　　\*　　\*　　\*　　\*　　\*

(e) Certified breath alcohol testing program (techniques and methods). Refers to any breath alcohol testing program meeting and maintaining the provisions stated in § 19.3 of this title (relating to Certification of Techniques, Methods, and Programs). This certification is referred to as a total breath alcohol testing program, or total local program. Usually a total testing program refers to an agency or laboratory which meets the minimum requirements of having a certified breath alcohol testing instrument, approved allied equipment, certified Technical Supervisor and certified operators and techniques, methods and programs which have been inspected and certified by the Scientific Director.

In order to obtain certification as a total program, the applying agency or laboratory should first contact the Office of the Scientific Director to determine the criteria and regulations regarding certification. After original contact, the applying agency, laboratory or school will be given an application with instructions which will be a guide to the acquisition of equipment and materials necessary for certification. When all requirements for certification are met, including the acquisition of certified personnel, the Scientific Director will make an on-site inspection prior to the issuance of certification. Issuance of a certificate shall be evidence that the agency, laboratory, or school possesses certified instruments and approved allied equipment.

Section 19.7(e) is not entirely clear. It interchangeably uses "program," "techniques," and "methods." *See also* § 19.7(d)(1)(D) ("... certification is granted to ... techniques, methods and programs (breath alcohol test programs, agencies)"). Section 19.7(e) states that a certified breath alcohol testing program refers to a program meeting and maintaining the certification provisions. It then states that the certification is referred to as a total breath alcohol testing program. It further instructs that a total testing program refers to an agency which meets the minimum requirements of having techniques, methods and programs which have been inspected and certified by the Scientific Director. Thus, a certified breath alcohol testing program refers to an agency having programs which have been certified.

Nevertheless, under § 19.7(e), a certified breath alcohol testing program is one that meets and maintains the provisions of § 19.3. The definitional provision refers back to § 19.3 and should not be read in isolation from the other regulations. *Harrell,* 725 S.W.2d at 213. The regulations must be read as a whole. *Id.*

In addition to subsections (a) and (b), set out previously in this opinion, § 19.3 provides:

(c) All breath testing techniques, in order to be approved shall meet but not be limited to the following:

(1) Continuous observation of the subject for a minimum period of time as set by the Scientific Director prior to collection of the breath specimen during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, smoked, or introduced any substances into the mouth.

(2) The breath alcohol testing instrument and allied equipment must be operated by either a certified operator or Technical Supervisor and only certified personnel will have access to the instrument. This provision will not apply to operators inactivated in accordance with § 19.4(c)(2) of this title (relating to Operator Certification).

(3) The use of a system blank analysis in conjunction with the testing of each subject.

(4) The analysis of a reference sample, such as headspace gas from a mixture of water and a known weight of alcohol at a constant temperature, the results of which must agree with the reference sample predicted value within $+/-0.01g/210L$, or such limits as set by the Scientific Director. This reference analysis shall immediately precede or immediately follow the analysis of the breath of the subject as determined by the Scientific Director.

(5) All analytical results shall be expressed in terminology established by state statute and reported to two decimal places without rounding off. (For example, a result of 0.237g/210L shall be reported as "0.23," or as stated by the Scientific Director.

(6) Maintenance of any specified records designated by the Scientific Director.

(7) Supervision of certified operators and testing techniques by a Technical Supervisor meeting the qualifications set forth in § 19.5 of this title (relating to Technical Supervisor).

(8) Designation that the instrumentation will be used only for testing subjects that are suspected of driving while intoxicated or in compliance with § 19.4(b), (c), and (e) of this title (relating to Operator Certification).

An agency with a certified breath testing program agrees to conform and abide by any directives, orders, and policies issued by the Scientific Director regarding any aspect of the breath alcohol testing program including those pertaining to methods of operations and testing techniques. § 19.3(f)(6). The Scientific Director or a representative may at any time inspect an approved breath testing agency to insure compliance with the regulations. § 19.3(d). The Scientific Director may deny or withdraw certification of a program if the certified agency fails to meet all criteria stated in § 19.3(a)–(c). § 19.3(g). Revocation is an action taken by the Scientific Director invalidating a current program. § 19.7(s)(1). Revocation applies in cases in which a certified breath alcohol test program can no longer maintain the provisions of the regulations. § 19.7(s)(1)(B). Revocation serves the purpose of enforcing the regulations and maintaining the scientific integrity of the breath alcohol test program. § 19.7(s)(2). When a program's certification has been revoked, it is invalidated until recertification, which requires a written request from the applicant to the Scientific Director and successful completion of the requirements for certification, recertification, and/or any additional requirements determined by the Scientific Director. § 19.7(s)(1).

Turning to the regulations affecting new instruments we find that all breath testing instruments to be used for evidentiary purposes must be approved and/or be certified by brand and/or model by the Scientific Director. § 19.1(a). Among the duties of the Scientific Director is the establishment and maintenance of a list of approved instruments certified by brand and/or model for use in the State. § 19.1(a)(1). The

inclusion of an instrument on the list of approved and/or certified instruments verifies that the instrument meets the criteria required by the regulations. § 19.1(c)(1). The technical supervisor shall determine if an individual instrument is the same brand and/or model that appears on the approved list. § 19.1(d).

From the foregoing regulations, it is clear to us that the San Antonio police department breath testing program was properly certified when appellee underwent the Intoxilyzer test. Taken as a whole, the regulations strive to attain and maintain scientific integrity in the area of breath alcohol testing. The purpose of program certification is to ensure that the program adheres to the techniques and methods set out in § 19.3(c) and in the Scientific Director's directives, orders, and policies. The application enables the Scientific Director to make the decision of whether an agency qualifies for certification so as to allow the program's initiation. The particular brand of instrument named within the application is pertinent only to the program's inception. Certification of a program manifests the Scientific Director's satisfaction that before the program goes into operation the program will be using a certified instrument, approved allied equipment, and proper testing techniques and methods performed by certified operators. Once a program is in place, the Scientific Director has the responsibility of ensuring the program's continuing compliance with the regulations.

We conclude that the regulations require only the initial application for a program to be certified. A reapplication is necessary only if the Scientific Director revokes the program's certification. When a new brand or model of an instrument is contemplated for use in a certified program, the technical supervisor must make sure that the instrument appears on the Scientific Director's approved list. Once the technical supervisor makes that determination, the instrument may then be introduced into the program without submitting a reapplication for the entire program.

The State's first point of error is sustained. The trial court erred in granting appellee's motion to suppress the Intoxilyzer results on the basis that the San Antonio police department's breath testing program was not properly certified due to the lack of a reapplication for certification in 1981.

We reverse the order suppressing the Intoxilyzer results and remand this cause to the trial court.