

# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THOMAS E. MAMMOSER, Appellant

No. 05-95-01564-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the County Criminal Court No. 2 of Dallas County, Texas. (Tr.Ct.No. MB94-24327-B).
Opinion delivered by Justice James, Justices Lagarde and Whittington participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 20, 1997.

TOM JAMES
JUSTICE

**AFFIRMED, and Opinion Filed February 20, 1997**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-95-01564-CR

---

## THOMAS E. MAMMOSER, Appellant

### V.

## THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 2
Dallas County, Texas
Trial Court Cause No. MB94-24327-B

## O P I N I O N

Before Justices Lagarde, Whittington, and James
Opinion By Justice James

The State charged Thomas E. Mammoser by information with driving while intoxicated (DWI). The jury found appellant guilty and the trial court assessed punishment at ninety days' confinement, probated for two years, with a $750 fine. Appellant presents four points of error on appeal.[1] First, appellant argues the evidence was factually

---

[1] This Court granted the State's second extension for filing its brief and ordered the brief due by September 12, 1996. On November 26, 1996, the State filed a third extension requesting this Court to accept the State's brief tendered on the same day. This court denied the State's motion on January 21, 1997 and struck the State's brief.

insufficient to support his DWI conviction. Second, appellant argues the trial court erred in admitting the breath test results into evidence. Last, appellant argues the prosecutor's comments during closing argument constituted reversible error. For the reasons set forth below, we affirm the trial court's judgment.

In his first point, appellant contends the evidence was factually insufficient to support his DWI conviction. On December 23, 1994, Officer Robert Olivas stopped appellant because he was speeding and weaving from lane to lane. Officer Mario Cmet, who took over appellant's stop for Olivas, arrested appellant after appellant failed at least three field sobriety tests. Appellant agreed to a breath analysis which established an alcohol concentration of 0.12.

Appellant described the roadway's poor conditions where the police stopped him and explained how his partial deafness contributed to his failing the field sobriety tests. Appellant focused on his improved behavior on videotape to show his poor performance on the field sobriety tests resulted from the external conditions combined with his deafness. Appellant presented two restaurant tabs to prove he consumed only four drinks which would not cause a 0.12 alcohol concentration.

In reviewing factual sufficiency, we do not view the evidence in the light most favorable to the prosecution. *Clewis v. State*, 922 S.W.2d 126, 134-35 (Tex. Crim. App. 1996). We set aside the verdict, however, only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

-2-

We remain deferential to avoid substituting our judgment for the factfinder's. *Id.* at 133-36. We will not reweigh the evidence and set aside the verdict merely because we believe a different result is more reasonable. *Id.* at 135. Thus, we review the factfinder's weighing of the evidence and can disagree with the factfinder's conclusion, but we exercise our jurisdiction only to prevent a manifestly unjust result. *Id.* at 132-33.

To convict appellant, the State had to prove he was "intoxicated while operating a motor vehicle in a public place." Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3697, *amended by* Act of April 21, 1995, 74th Leg., R.S., ch. 76, § 14.55, 1995 Tex. Gen. Laws 458, 841 (current version at TEX. PENAL CODE ANN. § 49.04(a) (Vernon Supp. 1997)). Intoxicated means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or "having an alcohol concentration of 0.10 or more." TEX. PENAL CODE ANN. § 49.01 (Vernon 1994).

Appellant dined at Ruggeri's restaurant. He testified that he consumed only three and a half drinks between 7:30 p.m. and 11:30 p.m. Appellant said he felt the effects of the alcohol "a little, but not to the point where [he] lost his faculties." Appellant denied weaving between lanes. Appellant said the police stopped him at a noisy location and the lights from the officer's car temporarily blinded him. He had difficulty hearing the officers because he was not wearing his hearing aid (appellant has a forty-two percent hearing loss).

Olivas had his car lights and spotlight on for safety when he stopped appellant. Olivas did not know of appellant's hearing loss and did not think appellant had difficulty

hearing his questions. According to Olivas, appellant had trouble finding his driver's license, smelled of alcohol, appeared disoriented, had poor balance, and made little eye contact. Moreover, appellant admitted he'd been drinking. On cross-examination, Olivas testified that appellant did not make any erratic gestures, drive on the shoulder of the road, or drive less than ten miles under the speed limit.

Olivas had been en route to pick up a prisoner. Because he did not have time to finish questioning appellant or conduct the field sobriety tests, Olivas called Cmet to take over for him. Cmet testified that the area was not well lit, but Cmet left his overhead lights and headlights on. Cmet said he usually stood between his car and the subject to keep the lights from blinding the subject. Like Olivas, Cmet noticed appellant's breath smelled of alcohol. Appellant slurred his speech and swayed when walking. Although appellant informed Cmet of his hearing problem, Cmet did not think this problem caused appellant's slurred speech. Furthermore, Cmet did not notice appellant having problems hearing his instructions. Both officers concluded appellant did not have the normal use of his physical and mental faculties.

Cmet arrested appellant, took him to the intoxilyzer room, and conducted further tests. Cmet noticed appellant's behavior improved during these tests. After thirty or forty minutes, Cmet used an intoxilyzer 5000 to test appellant's alcohol concentration which registered 0.12. In response to a hypothetical question from the defense, the State's expert stated that a man weighing 200 pounds would have to consume between thirteen and nine-

teen drinks within a six hour period to achieve a 0.12 concentration. Appellant's expert witness disputed the reading and explained the intoxilyzer 5000's unreliability.

The restaurant waiter and valet testified that appellant had problems communicating with them in the past. The waiter did not know, however, whether appellant's difficulty stemmed from hearing problems or the restaurant's noisy atmosphere. The valet added that appellant usually walked unsteadily. Neither the waiter nor valet knew appellant wore a hearing aid. Both said appellant had never been intoxicated before and they did not think he was intoxicated that night.

Appellant introduced two restaurant tabs from Ruggeri's. The bar tab totaled $15.50 and the dinner tab totaled $33.17 without tip. According to appellant, he consumed two and a half drinks at the bar and a glass of wine with his meal. He argues the two tabs combined prove he consumed only four drinks before leaving the restaurant. To prove he could not have had a previous tab, witnesses noted the restaurant's usual practice of clearing both tabs simultaneously. The restaurant printed appellant's tabs, however, approximately thirty minutes apart and the waiter could not verify their accuracy.

Although, the parties presented competing theories as to why appellant failed the field sobriety tests and had a 0.12 alcohol concentration, we do not find the jury's determination so contrary to the overwhelming weight of the evidence as to make it clearly wrong and unjust. We overrule appellant's first point of error.

In his second point, appellant contends the trial court erred in admitting the breath

test results because the State did not lay the proper predicate. Appellant asserts Cmet was not qualified to administer the test and did not follow proper procedures. For example, appellant argues Cmet failed to continuously watch appellant for fifteen minutes before conducting the test and lacked the qualifications to conduct a reference sample.

For the results to be admissible, the operator must perform the breath test according to the rules promulgated by the Texas Department of Public Safety. *See Gifford v. State*, 793 S.W.2d 48, 49 (Tex. App.--Dallas 1990), *cert. dismissed*, 810 S.W.2d 225 (Tex. Crim. App. 1991). The State must show (1) the existence of periodic supervision over the machine and operation by one who understands the machine's scientific theory and (2) proof of the result by a witness or witnesses qualified to translate and interpret such result. *Harrell v. State*, 725 S.W.2d 208, 209-10 (Tex. Crim. App. 1986). The State meets this requirement if the operator testifies he held a Department of Public Safety certificate and followed the Texas Department of Public Safety rules. *See Martin v. State*, 724 S.W.2d 135, 137-38 (Tex. App.--Fort Worth 1987, no pet.).

Cmet testified he was an intoxilyzer operator. He attended a week-long intoxilyzer operator school and learned about the intoxilyzer 5000. When questioned further, Cmet reiterated that the Texas Department of Public Safety certified him as an intoxilyzer operator and recertified him every year. Moreover, the Dallas County Medical Examiner's technical supervisor had personal knowledge Cmet was certified on December 23, 1994.

The remainder of appellant's argument is unfounded in law or fact. Cmet testified

he observed appellant fifteen minutes before the test. The regulations specifically state that "[d]irect observation is no longer necessary to ensure the validity or accuracy of the test result." 15 Tex. Reg. 6602 (1990) (codified as an amendment to 37 Tex. Admin. Code § 19.3(c)(i) (to be effective Nov. 30, 1990).

The technical supervisor checked the machine on December 22, 1994 and it operated correctly. He testified that the test record (1) indicated Cmet followed the proper operational methods of testing techniques and (2) reflected the results of the reference analysis was within the tolerance of the predicted reference sample. On cross-examination, the technical supervisor explained that in order for a test result to be valid, the results achieved would have to be within plus or minus .01. The lowest acceptable value would be a .090 and the highest acceptable value would be .110. In appellant's case, the range was acceptable because it was .094. The technical supervisor's testimony established that Cmet followed the proper techniques when conducting the breath analysis and explained how the intoxilyzer 5000 contained a built in reference check to verify the test result's validity. We overrule appellant's second point of error.

In his third and fourth points, appellant contends the prosecutor's comments during closing arguments inflamed the jury and struck at appellant over trial counsel's shoulders thus constituting reversible error. The trial court sustained appellant's objections. Appellant never asked for an instruction to disregard or a mistrial. On appeal, appellant argues the prosecutor's comments were so egregious they could not be cured by an instruction to

disregard and therefore constituted reversible error. *See e.g., Montoya v. State*, 744 S.W.2d 15, 37 (Tex. Crim. App. 1987), *cert. denied*, 487 U.S. 1227 (1988); *Romo v. State*, 631 S.W.2d 504, 505 (Tex. Crim. App. 1982).

Recently, the Court of Criminal Appeals reexamined a defendant's right to complain about jury argument on appeal. The court held "a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Although appellant objected and the trial court sustained his objections, appellant failed to pursue to an adverse ruling his objection to the State's jury argument. Because appellant failed to pursue his objections to adverse rulings, he forfeited his right to complain on appeal. *Id.* We overrule appellant's third and fourth points of error.

For the reasons set forth above, we affirm the trial court's judgment.

TOM JAMES
JUSTICE

Do Not Publish
Tex. R. App. P. 90
951654F.U05

-8-