

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-11-00764-CR

Kiona F. **BOUTANG**,
Appellant

v.

The **STATE** of Texas,
Appellee

From County Court at Law No. 9, Bexar County, Texas
Trial Court No. 314520
Honorable Walden Shelton, Jr., Judge Presiding

Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting en banc:      Catherine Stone, Chief Justice
                    Karen Angelini, Justice
                    Sandee Bryan Marion, Justice
                    Marialyn Barnard, Justice
                    Rebeca C. Martinez, Justice
                    Patricia O. Alvarez, Justice
                    Luz Elena D. Chapa, Justice

Delivered and Filed:  June 5, 2013

Respectfully, I dissent from the court's denial of appellant's motion for rehearing en banc without requesting a response.

I believe the trial court violated Boutang's rights under the Confrontation Clauses of the United States and Texas Constitutions by overruling her objections to the testimony of the State's expert witness, Deborah Stephens, and to the admission of the breath test results and breathalyzer maintenance reports.  U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see*

*Crawford v. Washington*, 541 U.S. 36, 68 (2004) (in order for testimonial evidence to be admissible, Sixth Amendment demands unavailability and prior opportunity for cross-examination). In holding that admission of the challenged evidence did not violate Boutang's confrontation rights, the opinion follows the Fort Worth Court of Appeals's opinion in *Settlemire v. State*, 323 S.W.3d 520 (Tex. App.—Fort Worth 2010, pet. ref'd), with misplaced reliance on a footnote that is more dicta than precedent and that precedes the United States Supreme Court's decision in *Bullcoming v. New Mexico*.[1]

At trial, Stephens was called to testify in place of George Allen McDougall, Jr. who, at the time of Boutang's arrest, was the breath test technical supervisor personally responsible for maintaining and operating the Intoxilyzer 5000 machines in Bexar County. Although Stephens had no personal knowledge of the evidence proffered through her testimony, the State called her to testify even though, as the record reflects, McDougall was not unavailable. As the opinion points out, Stephens sponsored the admission of all the inculpatory evidence against Boutang at trial. This included State's Exhibit 10 (breath test slip printed by Officer Charles Marcus who administered the test), and State's Exhibits 11 and 12 (intoxilyzer maintenance records signed and verified by McDougall).

The proponent of scientific or technical evidence has the burden of demonstrating by clear and convincing evidence that the evidence is both reliable and relevant. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (applying several factors that may affect reliability, including "the experience and skill *of the person who applied the technique on the occasion in question*") (emphasis added); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-92 (1993). Three criteria must be satisfied for scientific evidence to be

---

[1] *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2715-16 (2011) (holding it was a violation of defendant's confrontation rights to admit blood alcohol content lab report through testimony of different analyst than the one who prepared the report).

considered reliable: (1) the underlying theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must be properly applied on the occasion in question. *See Kelly*, 824 S.W.2d at 573. *Kelly* applies to all scientific evidence offered under Rule 702, including intoxilyzer test results. TEX. R. EVID. 702; *see Hartman v. State*, 946 S.W.2d 60, 63 (Tex. Crim. App. 1997). Even if the underlying scientific principles of a breath test are considered valid as a matter of law,[2] the State must still establish that a qualified officer applied a valid technique and that it was correctly applied on the particular occasion in question. *See id.*; *Maysonet v. State*, 91 S.W.3d 365, 371 (Tex. App.—Texarkana 2002, pet. ref'd) (testimony from officer who conducted stop for speeding violation satisfied second and third *Kelly* prongs); *Mills v. State*, 99 S.W.3d 200, 201 (Tex. App.—Fort Worth 2002, pet. ref'd). In this case, whether the technique was properly applied on the occasion in question is evidence the State could only proffer through McDougall.

In *Harrell v. State*, the Court of Criminal Appeals established a three-part predicate for the admission of an intoxilyzer test result, requiring the State to: (1) show the machine functioned properly on the day of the test as evidenced by the running of a reference sample; (2) show the existence of periodic supervision over the machine and its operation by one who understands the scientific theory of the machine; and (3) prove the result of the test through a witness qualified to translate and interpret the result so as to eliminate hearsay. *Harrell v. State*, 725 S.W.2d 208, 209-10 (Tex. Crim. App. 1986). The court explained that, "[b]ecause the reference sample is so important to the intoxilyzer in Texas, a showing of proper use of a

---

[2] "The use of breath testing evidence to prove intoxication was first approved by [the Court of Criminal Appeals] in the case of *McKay v. State*, 155 Tex. Cr. R. 416, 235 S.W.2d 173 (1950) and it continues to be admissible evidence provided the proper predicate is shown." *Stevenson v. State*, 895 S.W.2d 694, 696 n.3 (Tex. Crim. App. 1995) (citing *Langford v. State*, 532 S.W.2d 91, 95 (Tex. Crim. App. 1976)); *see also Hill v. State*, 158 Tex. Cr. R. 313, 256 S.W.2d 93 (1953).

reference sample satisfies the first prong of the predicate . . . ." *Id.* at 210 (modifying the three-prong predicate due to the nature of the intoxilyzer instrument). The court held that McDougall's testimony with respect to his preparation and proper use of the reference sample to check the functioning of the intoxilyzer satisfied the first prong of the three-prong predicate for admission of the intoxilyzer test results. *Id.*

As the opinion points out, in this case McDougall personally created a reference solution for use in the machines, periodically changed out the solution in the machines, set the machines to anticipate the particular amount of alcohol in the reference solution, and created records to reflect the same. However, the opinion then ignores the crucial aspects of McDougall's direct involvement in the maintenance and operation of the machines that require his personal knowledge and expertise; instead, the opinion effectively holds that this particular machine, the Intoxilyzer 5000, is self-authenticating. To distinguish *Bullcoming*, the opinion describes the breath test slip as a "machine-generated print-out" by the machine that is neither testimonial nor necessary to "establish or prove past events for use in criminal prosecution." Disregarding the three-prong predicate established in *Harrell*, the opinion concludes that a surrogate expert certified as an Intoxilyzer operator, but only "familiar with" maintenance procedures, may translate and interpret the test results. Absent from the opinion is any consideration of reliability, or, at a minimum, recognition of a machine's inherent need to be inspected which itself suggests the possibility of malfunction. Forensic evidence, albeit machine-generated, that is created specifically to serve as evidence to prove the guilt of the accused in a criminal proceeding is "testimonial." *See Michigan v. Bryant*, 131 S.Ct. 1143, 1156 (2011) (in determining whether evidence is "testimonial," court makes objective inquiry into primary purpose for creation of the evidence); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (forensic lab report

created and used to prosecute is testimonial); *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (statements made to establish or prove past events for use in criminal prosecution are testimonial). A surrogate witness, no matter how credible, can offer no more reliable testimony about irregularities observed or disregarded by McDougall than McDougall himself. Simply stating "there is only one type of breathalyzer test," hence no similar concern of what "particular test and testing process" was used (as there is for a blood test), suggests a complete disregard for the predicate required of any test conducted on an accused in a DWI prosecution. Do we extend this rationale to any of the field sobriety tests?

The trial court, serving as "gatekeeper," abused its discretion by allowing the State to proffer the surrogate testimony of Stephens, whose knowledge was not sufficiently tied to the facts of this case and who therefore could not aid the jury in resolving any factual dispute regarding the proper application of a valid technique on the particular occasion in question, i.e., whether a proper reference solution was generated or used to test the machine on the occasion in question. In an analogous situation, consider a speed radar gun. If the accused is entitled to confront the officer who operated and maintained the radar gun, to examine whether and how the officer calibrated and operated the speed radar gun to ensure that it was functioning properly at the time the officer obtained the "evidence" of speeding, the State is no less obligated to proffer McDougall as "the only witness qualified to interpret the result and qualified to testify about the certification of the equipment used to achieve that result." *Harrell*, 725 S.W.2d at 210.

In conclusion, while Stephens may have been qualified to understand the scientific principles upon which the Intoxilyzer 5000 operated, and was trained on the machine, she could not certify the machine or the proper use of the reference sample prepared by McDougall. Her interpretation of the test results used against Boutang was based on hearsay. *See Bryant*, 131

S.Ct. at 1155.  Her testimony, in fact, offers merely a "belief" regarding the truth of the matters asserted.  She cannot convey what the actual analyst knew or observed about the particular test or about the testing process he employed.  *See Bullcoming*, 131 S.Ct. at 2715; *Melendez-Diaz*, 557 U.S. at 315-16.  Lastly, the breath test slip and maintenance records sponsored by Stephens as "custodian of records" for Bexar County, but who neither supervised the officer administering the test nor could certify the records signed by McDougall, were improperly admitted as "documents prepared in the regular course of equipment maintenance."  "From *Hill* through *Harrell*, [the Court of Criminal Appeals] has recognized that the rule against hearsay could render breath test evidence inadmissible."  *Stevenson*, 895 S.W.2d at 696.  While conceding it offers merely a suggestion, the opinion in this case adopts *Settlemire*'s misinterpretation of a footnote in *Melendez-Diaz*, which constitutes mere dicta.[3]  The opinion's reliance on the footnote is misplaced.  I believe the trial court violated Boutang's confrontation rights by admitting the testimony of Stephens as a surrogate for McDougall in sponsorship of State's Exhibits 10, 11, and 12.

I therefore respectfully dissent.

Rebeca C. Martinez, Justice

PUBLISH

---

[3] *See Young v. State*, 826 S.W.2d 141, 144-45 n.5 (Tex. Crim. App. 1991) (Court of Criminal Appeals has declared that its footnotes are dicta).