Christie M. KERCHO, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00948–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 22, 1997.

Rehearing Overruled June 26, 1997.

Ross Palmie, Houston, for appellant.

S. Elaine Roch, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

ANDERSON, Justice.

Christie M. Kercho appeals her conviction for driving while intoxicated. She raises three points of error. First, she argues that the trial court erroneously refused to instruct the jury that it could disregard evidence that was unlawfully obtained pursuant to article 38.23 of the Texas Code of Criminal Procedure. Second, she contends that the trial court erred when it admitted into evidence the intoxilyzer slips from two invalid intoxilyzer tests despite the State's failure to establish that the intoxilyzer operator was qualified or that he followed the Department of Public Safety (DPS) Rules and Regulations in administering the test. Finally, she argues that the trial court erroneously permitted expert testimony based on the invalid tests without laying a predicate that the DPS Rules and Regulations had been followed. We affirm the judgment of the trial court.

On April 21, 1994, Deputy Constable George Loher of the Harris County Sheriff's Department observed appellant driving her car at a high rate of speed. At approximately the same time, a Houston Police Officer, J.W. Harris, clocked her traveling at ninety-two miles per hour in a fifty-five mile per hour zone. As both officers watched, appellant ran a red light. Both proceeded to pull her over. The officers noticed that, as appellant opened her car door, the strong odor of an alcoholic beverage was present. Deputy Loher conducted field sobriety tests on appellant while Officer Harris watched. Both concluded that appellant was intoxicated. Officer Harris placed appellant in the back seat of his patrol car and called for a DWI task force unit. Officer J.J. Miller of the Houston Police Department arrived. He noticed the strong odor of alcohol on the appellant's breath and asked her to perform field sobriety tests. He concluded that she had lost the normal use of her physical and mental faculties.

Officer J.J. Miller transported appellant to the Houston Police Department. He read her the DWI statutory warnings and gave her a copy of the warnings. Then, he asked her to take an intoxilyzer test. Appellant attempted to do so twice but was unable to complete both tests. The first resulted in an "invalid sample" reading and the second resulted in a "deficient sample" reading. Later, Houston Police Officer J.S. Miller administered another battery of field sobriety tests while videotaping appellant. He, too, concluded that she was intoxicated.

Appellant was charged by Information alleging that this offense occurred on or about April 21, 1994. In his opening remarks to the jury panel, the trial judge read the Information charging the defendant with driving while intoxicated "on or about April 21st, 1994." Later, in his opening statement, the

prosecutor referred to this same date as the date that all of the alleged events leading up to appellant's arrest transpired. However, *when questioning Officers Loher and Harris,* the prosecutor began by stating, "I would like to direct your attention to the night of *April 4th,* of 1994."[1] Later, when questioning Officer J.J. Miller, the prosecutor elicited the relevant facts by stating, "I would like to direct your attention to the night of *April 21,* of 1994." All subsequent witnesses were questioned about the events of April 21st, the correct date.

Due to this discrepancy, counsel for appellant requested that the court instruct the jury that they could disregard all evidence obtained after Officer J.J. Miller arrived at the scene, alleging that all evidence of probable cause to arrest the appellant had been developed in the testimony of Officers Loher and Harris, both of whom testified about circumstances occurring on April 4th. The only officer to testify about events occurring on April 21st was Officer Miller, whose testimony, standing alone, did not establish probable cause to arrest appellant for driving while intoxicated because he did not observe appellant operating a motor vehicle. Appellant contends that the discrepancy in dates created a fact issue concerning whether probable cause existed to arrest appellant on April 21st. She argues that she was entitled to a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure explaining that, if the jury agreed that the arrest was not supported by probable cause, they could disregard all evidence obtained as a result of the arrest. The court denied appellant's request for the jury instruction.

■ In her first point of error, appellant challenges the trial court's refusal to give the requested instruction. As a general rule, any evidence obtained in violation of the law must be excluded from the jury's consideration at the defendant's request. TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp. 1997). If the evidence is inadmissible as a matter of law, the court must exclude it from the jury's consideration altogether. *Id.* at 38.23(a). On the other hand, when there are disputed fact issues regarding the admissibil-

ity of evidence, the court must, at the defendant's request, instruct the jury that it should disregard evidence if it believes or has a reasonable doubt that such evidence was obtained illegally. *Id.; see also Atkinson v. State,* 923 S.W.2d 21, 23 (Tex.Crim.App. 1996). At trial, appellant requested an instruction under article 38.23 arguing that the evidence suggests two separate arrests occurred on two different dates and a fact issue exists as to whether the arrest on April 21 was supported by probable cause. The trial court rejected appellant's argument, finding no evidence that more than one arrest occurred and that the single arrest that did occur was supported by probable cause regardless of the confusion as to the dates. As a result, the court ruled as a matter of law that all the evidence gathered as a result of the traffic stop and subsequent arrest was legally obtained.

■ We agree with the trial court. Because there was no genuine fact issue about how the evidence was obtained, the trial court was correct in refusing appellant's requested instruction. Despite appellant's artful argument regarding the inadvertent discrepancy in the dates, the evidence introduced at trial supports the existence of only *one* traffic stop and *one* arrest. The jury knew from the reading of the Information and the prosecutor's opening statement that there was only one stop and arrest, and no testimony supports the proposition that a second stop and arrest occurred. Even if we are to accept, as appellant invites us to do, that the prosecutor's inadvertent error was an accurate description of the events leading up to appellant's arrest, the same result would obtain. At best, the record supports that appellant was initially stopped by Officers Loher and Harris on April 4th, was arrested based on the probable cause developed during this stop, and then was detained in the officer's car for some sixteen days, at which time Officer Miller transported her to the station *based on the same probable cause discovered in the stop that occurred on the fourth and communicated to Officer Miller by Officers Harris and Lo-*

---

1. Emphasis throughout this opinion is the au-

thor's unless otherwise specified.

*her.* Any conflict in the evidence is a conflict as to when the offense occurred, not a conflict as to the existence of probable cause supporting appellant's arrest.[2]

■ Therefore, rather than a material fact issue as to the evidence supporting probable cause, here, the trial court was faced with a simple mistake in the prosecutor's questioning. Questions do not amount to evidence. *Sendejo v. State,* 841 S.W.2d 856, 859 (Tex. App.—Corpus Christi 1992, no pet.). Absent this error in questioning, the record contains no independent evidence of the occurrence of a second arrest, unsupported by probable cause. Thus, the mistake that occurred here does not amount to a factual dispute concerning the existence of probable cause to arrest appellant requiring an article 38.23 instruction. Appellant's first point of error is overruled.

■ In her second point of error, appellant argues that the trial court erred when it permitted the State to introduce the two intoxilyzer test slips into evidence without showing that the administrator of the test was qualified and that the DPS Rules were followed in administering the test. In order to admit the results of an intoxilyzer test into evidence, the State is required to show: (1) that the machine functioned properly on the day of the test as evidenced by the running of a reference sample through the machine; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine; and (3) proof of the results of the test by a witness qualified to translate and interpret such results. *Harrell v. State,* 725 S.W.2d 208, 209 (Tex.Crim.App.1986). The State established this predicate through the testimony of two officers who stated that the machine was periodically tested to ensure

that it was working properly and a test sample run prior to appellant's intoxilyzer tests demonstrated the machine was functioning properly at that time. Officer Miller, who administered the test to appellant, testified that he had been trained in the operation of the intoxilyzer machine. Officer Frommhold, who testified about the potential reasons for an invalid test result, was also trained in the operation of the machine and was certified by the DPS as a technical supervisor. This testimony appears to satisfy the predicate requirements set out in *Harrell.*

■ Appellant argues that, because Officer Miller did not expressly state that he was certified by the DPS to operate the intoxilyzer, he was not qualified to administer the test, and as a result, the intoxilyzer slips should not have been admitted. Although *Harrell* does not specifically require the State to prove that the operator is certified by the DPS before intoxilyzer results may be admitted into evidence, article 6701*l*–5 of the Texas Revised Civil Statutes mandates that the officer administering the test must be certified by the DPS. However, even if we assume that the evidence introduced at trial was not sufficient under the more specific requirements of article 6701*l*–5 to show Officer Miller was qualified to operate the intoxilyzer,[3] we find that this statutory requirement was not triggered under the facts of this case.

■ The requirements of article 6701*l*–5 are invoked only when the State seeks to admit the *actual alcohol concentration* of appellant's breath into evidence. Section 1 of the statute provides that an operator of a motor vehicle, who is arrested for driving while intoxicated, is deemed to have consented to the taking of a specimen of his or her

2. Because the information alleges that the offense occurred "on or about April 21st," this discrepancy is insignificant. When an indictment or information alleges an "on or about" date as the date of the commission of the offense, the state is not bound by the date alleged but may convict upon proof that the offense was committed any time prior to return of that indictment or information within the period of limitation. *See Ex parte Hyett,* 610 S.W.2d 787 (Tex.Crim.App. 1981); Tex.Code Crim.Proc.Ann. arts. 21.02(6) and 21.21(6) (Vernon 1989). Here,

the information was returned on April 22, 1994. Thus, the "on or about" language encompasses both April 4th and April 21st.

3. We note that there is some evidence in the record that may support that Officer Miller was, in fact, certified. The intoxilyzer slips admitted into evidence provide an Operator's Certificate Number for J.J. Miller. However, we will not speculate as to what this notation indicates and in no way base our resolution of this case on it.

breath for the purposes of "analysis to determine the *alcohol concentration.*" Section 3(a) provides that "evidence of the *alcohol concentration* ... taken at the request or order of a peace officer shall be admissible" at the trial of any proceeding involving an arrest for driving while intoxicated. The statute defines "alcohol concentration" as "the number of grams of alcohol per 210 liters of breath." Based on these provisions, we conclude that compliance with the dictates of article 6701*l*–5 section 3(b) is required merely to establish the validity of the *results* of the breath test at trial. Thus, these requirements are not triggered when the State concedes that the results of the test are invalid and makes no attempt to introduce any results in order to show the alcohol concentration of appellant's breath at trial.

In this case, the State did not seek to admit *the results* of the intoxilyzer test into evidence.[4] In fact, the State conceded that *no valid results* were obtained as a result of either test. Further, the trial court specifically asked both the attorney for the State and appellant's counsel whether the slips the State sought to have admitted contained any results from the intoxilyzer tests. Both attorneys acknowledged that no results were on the slips, and no witness testified to any results obtained from the test. Thus, the State was seeking to prove intoxication without benefit of the intoxilyzer reading and relying solely on the observations and expert opinions of the officers who witnessed appellant's condition on that night and concluded that she had lost the normal use of her mental or physical faculties as a result of the introduction of alcohol into her body.

Appellant urges us to follow other courts which have held that even *invalid* intoxilyzer results should be excluded when the DPS rules have not been followed. *See May v. State,* 784 S.W.2d 494, 496–98 (Tex.App.—Dallas 1990, pet. ref'd); *Boss v. State,* 778 S.W.2d 594, 595 (Tex.App.—Austin 1989, no pet.). In those cases, however, the State had introduced a *preliminary reading* from the digital indicator on the machine which registered the alcohol concentration in the defen-

dant's breath at above .10 as evidence of the defendant's intoxication.

Because the State conceded at trial in this case that no valid results were obtained, and no intoxilyzer reading, preliminary or otherwise, was put before the jury, we find no error in the trial court's decision to permit the State to introduce the slips into evidence to demonstrate to the jury that an attempt was made to determine the alcohol content of appellant's breath and elicit expert testimony as to the possible causes of receiving an invalid result.

■ In addition to its complaint that Officer Miller was not a qualified intoxilyzer operator, appellant offers a second reason why the intoxilyzer slips should not have been introduced into evidence. She contends that the State should have demonstrated that the intoxilyzer tests were performed in accordance with the regulations established by the DPS as a predicate to the admissibility of the slips. Appellant's argument fails for two reasons. First, like the certification requirements, the DPS rules are only triggered when the State introduces evidence of the actual results of the intoxilyzer test. These rules are incorporated by reference in article 6701*l*–5, Sec. 3(b) of the Texas Revised Civil Statutes, which provides that intoxilyzer tests must be performed according to rules of the Texas Department of Public Safety.

■ Moreover, while the statute clearly indicates that the DPS rules must be followed when the test is administered in order to admit the results of an intoxilyzer test at trial, it does not mandate that the State must *affirmatively introduce testimony* as to the officer's compliance with each of these rules *as a predicate to admissibility* of the results of the intoxilyzer test. *Gifford v. State,* 793 S.W.2d 48, 49 (Tex.App.—Dallas 1990, pet. dism'd). *Harrell* adequately defines the predicate for admissibility of intoxilyzer evidence, and the State need not affirmatively prove up compliance with each of the DPS rules unless a fact issue concerning compliance with a particular rule has been raised. *Id.; see also Atkinson v. State,* 923 S.W.2d

---

4. Prior to trial, the court granted appellant's motion in limine to specifically prohibit the State from introducing *any intoxilyzer results* into evidence.

21, 23 (Tex.Crim.App.1996). Appellant did not raise a fact issue at trial concerning the State's compliance with the DPS rules. Thus, the State was not required to affirmatively prove up the officer's compliance with the rules in this case. Appellant's second point of error is overruled.

In her third point of error, appellant argues that the trial court erred when it permitted the State's expert to testify concerning his opinion as to the cause of the intoxilyzer's failure to produce a valid reading. Appellant concedes that an expert may testify from evidence admitted at trial.[5] She bootstraps her third point of error to her second point of error, however, arguing that because the intoxilyzer slips were not properly in evidence, the expert should not have been permitted to testify about them. Because we have already concluded that the slips were admissible, this argument has no merit. Accordingly, we overrule appellant's third point of error.

We affirm the judgment of the trial court.

---

**5.** An expert may also testify concerning facts and data that have not been admitted into evidence if they are of a type reasonably relied upon by experts in the particular field in forming opinions and inferences upon the subject. Tex. R.Crim.Evid. 703.