Affirmed and Memorandum Opinion filed June 30, 2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00714-CR



 

Douglas Ray Wyatt, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1213961



 

MEMORANDUM  OPINION

 

Appellant Douglas Ray Wyatt pleaded guilty to
aggravated sexual assault with a deadly weapon, and the trial court assessed an
enhanced sentence of confinement for 30 years.  We affirm.

BACKGROUND

The complainant was walking past appellant’s
apartment complex on the evening of April 29, 2009 when appellant approached
and asked her if she had a light for a cigarette.[1] 
When the complainant looked down and searched for her lighter, appellant placed
a knife to her throat and forced her to accompany him to his apartment.  Once
inside the living room of the apartment, appellant locked the door and stated:
“We can do this the easy way or we can do this the hard way.”  Appellant told the
complainant that she was lucky he had not yet killed her.  Appellant turned on the
television and turned up the volume.  The complainant told police that she
feared for her life, and that when appellant ordered her to remove her clothes,
she complied.

The complainant related the following information to
the police:

            [The complainant] stated once she had removed
her clothes, the defendant placed the knife to her throat before he lowered his
pants and forced her to perform oral sex on him.  As she performed oral sex on
the defendant, he held the knife to her throat and kept telling her he was
going to kill her if she caused any trouble. . . .

            [The complainant] stated the defendant had her
lie on the couch while he removed his pants.  She stated he then inserted his
penis into her vagina and began to have sex with her. . . .

            [The complainant] stated she told the defendant
she needed to use the restroom; however, he would not allow her to use his
bathroom and directed her to use a blanket lying nearby as her toilet.  [The
complainant] stated she defecated and urinated on the blanket.

            [The complainant] stated the defendant then
removed several vibrators and sex toys from a backpack.  He inserted a vibrator
inside her vagina and another inside her anus.  [The complainant] stated she told
him she was thirsty and when he left the living room to get her a glass of
water she was able to unlock the front door and escape.

            She stated she was
totally naked as she ran to her boyfriend’s house where she redressed before
calling the police from [a] nearby Texaco station. . . .

Appellant pleaded guilty to the allegation of
aggravated sexual assault in the indictment; appellant also pleaded true to the
enhancement paragraph.[2] 
Appellant elected to have the trial court assess his punishment, and he filed a
motion for community supervision.  The trial court directed the preparation of
a PSI report and reset appellant’s punishment hearing.  

At appellant’s punishment hearing, the complainant
testified that she has been afraid to walk outside at night or leave the house since
the assault, and that she would not feel safe if appellant is released on
community supervision.  She also testified that she has nightmares of being
raped.[3]

Appellant’s common-law wife testified that she and
her daughter were in appellant’s apartment the night of the incident, and that
their bedrooms are about two or three feet away from the living room.  She
testified that she heard loud music at some point and asked appellant to turn
the volume down, but that she and her daughter were otherwise asleep and did
not wake up until the police came to her door later that night.  She testified
that she has seen the complainant a few times, and that the complainant came to
her door the day after appellant was arrested to say that “she was sorry.”  

Appellant’s wife also testified that appellant is consistently
employed, is not a violent person, would not be a danger to society, and would
follow the terms of his community supervision if the trial court deferred
adjudication of the offense.  She testified that appellant should be punished
if he committed the offense, but that she’d “never known him to do anything
like that.”  She testified that she understood he had pleaded guilty to the
offense, but appellant’s plea didn’t change her opinion of him or his tendency
toward violence.

Appellant testified that he has had a previous sexual
relationship with the complainant, and that the two engaged in a consensual
sexual encounter the night of the incident.  He said the complainant was
“pretty distraught” that night because she had been on a “three-day
[drug-related] adventure.”  He testified that he used the knife as part of a
sex game for “amusement” and for “faster orgasm;” he testified that the
complainant’s urination and defecation on the blanket in the living room were
“an arousal thing” and also part of the sex game.  When questioned if he
understood that the complainant “may have been afraid with the knife thing,”
appellant answered, “Yes.”  He testified that the complainant picked up her drugs
and left his apartment naked, and that he folded her clothes, left them by the
front door, and fell asleep waiting for her to return.  He testified that the
reason the complainant ran out of his apartment naked was because of her drug
use.

Appellant testified that he would willingly comply
with any community supervision requirements, and he would complete any
court-ordered treatment or therapy.  He admitted that his actions in the living
room the night of the incident with his wife and daughter in the next room were
“a real bad thing.”

The trial court adjudicated appellant guilty of
aggravated sexual assault with a deadly weapon and sentenced him to 30 years’
confinement.  

Appellant appeals, arguing (1) the trial court’s
denial of appellant’s motion for new trial without an evidentiary hearing was
prejudicial error; (2) the prosecution engaged in misconduct by cross-examining
appellant about certain issues that the State promised would not be raised at
trial; (3) the use of such “evidence” violated the Texas Code of Criminal
Procedure; (4) the trial court erred in refusing to allow appellant 48 hours to
review the PSI report prior to the punishment hearing; and (5) his guilty plea
was involuntary.  We address appellant’s issues out of order.  

ANALYSIS

I.         48-Hour
Review of PSI Report

Appellant argues in
his fourth issue that the trial court erred in refusing to allow appellant 48
hours to review the PSI report prior to the punishment hearing.

The following exchange took place at the hearing:

THE COURT: [Counsel,] do you have any objection to the
presentence investigation report?

[COUNSEL]: Well, judge, the only objection I have is, as I
stated to the Court earlier, I just received the report yesterday afternoon at
around 3:00 or 4:00 o’clock in the afternoon, Judge.

THE COURT: Yes, sir.

[COUNSEL]: And I was only able to discuss it with my client
briefly this morning.  So, I would object at this time to the report based on
the fact that I really didn’t have sufficient time to review it yesterday.

THE COURT: What time did you get it?

[COUNSEL]: Judge, around 3:00, I think it was.  Could have
been 4:00 o’clock.

THE COURT: All right.  And it’s 10:30 this morning.

[COUNSEL]: Yes, sir.

THE COURT: I think you could read this report two or three
times in that length of time.

[COUNSEL]: Yes, sir.

THE COURT: That will be
overruled.

Texas Code of Criminal Procedure article 42.12,
section 9(d), provides that, “[u]nless waived by the defendant, at least 48
hours before sentencing a defendant, the judge shall permit the defendant or
his counsel to read the presentence report.”  Tex. Code Crim. Proc. Ann. art.
42.12, § 9(d) (Vernon 2006).  Although the discussion between appellant’s
counsel and the trial court reflects that the trial court did not abide by the
48-hour review requirement and appellant did not waive this right, appellant does
not argue that he needed additional time to be able to challenge the factual
accuracy of the information in the PSI report at the hearing.  See id. §
9(e) (“The judge shall allow the defendant or his attorney to comment on a
presentence investigation or a postsentence report and, with the approval of
the judge, introduce testimony or other information alleging a factual
inaccuracy in the investigation or report.”).  We conclude on this record that harm
has not been demonstrated.  See Tex. R. App. P. 44.2(b)
(non-constitutional errors that do not affect substantial rights must be
disregarded).  We overrule appellant’s fourth issue.

II.        Cross-Examination
of Appellant

Appellant’s remaining four issues relate to the State’s
cross-examination of appellant during the punishment hearing:

Q. Do you know a woman named Freddie Washington?

[COUNSEL]: Judge, I’m going to object to that.  That’s
irrelevant, Judge.  That is irrelevant and not part of this proceeding.  It’s
not connected to this case, and I’d object to that.

[STATE]: Judge, if I may —

THE COURT: I’ll ask the State to establish the relevance. 
Overruled at this point.

Q. (By [STATE]) Do you know a woman named Freddie
Washington?

A. No.

Q. You don’t?

A. No.

Q. A woman who lived across the street from you?

A. No.

Q. Never heard of her before?

A. I saw her, but I don’t know her.

Q. You know that she was found dead on December 24, 2008?

[COUNSEL]: And, Judge, I object.  There is no connection to
him and Freddie Washington, Judge; and I object to that.

[STATE]: Judge, there is a connection.  This is a
punishment thing, but there’s D.N.A. connecting the —

[COUNSEL]: No.  And, Judge, I would object to that.  And I
strongly object to that, Judge.  That is wrong for him to say that; and I
object to that, Judge.  That is wrong.

[STATE]: Well, there is —

[COUNSEL]: There is no D.N.A. that’s going to match his
D.N.A., Judge, and I object to that.

[STATE]: There is a — he’s included in the D.N.A. report. 
It’s not a high number, but he’s included.

[COUNSEL]: And that’s what’s so wrong about it, Judge. 
It’s entirely wrong, and I object to that.

THE COURT: That’s not in evidence before the Court.

[STATE]: No, Judge; but it is a punishment hearing and we
have a good faith basis.

[COUNSEL]: And, in fact, Judge, he told me this was not
going to be part of any — of this case at all.

[STATE]: I said that we would not — we would not include it
as any type of extraneous offense, which we did not.  It’s not included as any
type of extraneous offense.  But I certainly have a good faith basis to
question him about it.

[COUNSEL]: Judge, it’s entirely wrong, Judge.  To bring it
up at this point in time is wrong.

THE COURT: Did you give him notice?

[STATE]: Yes, Judge.  It’s in the 404/609 notice of this
case when it was set for trial.

[COUNSEL]: He also sent me a letter, Judge; and in his own
letter — or a fax saying that he did not intend to use this for anything.  He
faxed that to me.

[STATE]: In a punishment hearing, though, Judge.  I
couldn’t bring it up in the case in chief.  I certainly agree to that.  But
it’s not enough evidence to go forward on it, but I certainly have a good faith
basis to question him about it.

[COUNSEL]: And that’s not part of the PSI report before
you; so, I object to all that.

THE COURT: I’ll sustain his
objection.

Appellant did not seek any
further relief at the hearing.

A.        Trial
Objections

Appellant argues in
his second issue that the prosecution engaged in misconduct by cross-examining
appellant about Freddie Washington and her death when the State had previously
promised that the issue of Washington’s alleged murder would not be used at
trial.[4] 
However, appellant does not identify any improper ruling or action by the trial
court in connection with his second issue.  The trial court granted appellant’s
requested relief when it sustained appellant’s objection to the State’s
cross-examination regarding Washington.  Appellant sought no additional relief
for any alleged prosecutorial misconduct during the hearing.  We overrule appellant’s
second issue.    

Appellant argues in his third issue that the use of
such “evidence” violated the Texas Code of Criminal Procedure.  Questions,
however, are not evidence.  Kercho v. State, 948 S.W.2d 34, 37 (Tex.
App.—Houston [14th Dist.] 1997, pet. ref’d).[5] 
Appellant denied any knowledge of Washington or her death.  In response to
arguments regarding alleged DNA evidence that may or may not link appellant to
Washington in some unidentified way, the trial court specifically acknowledged:
“That’s not in evidence before the Court.”  The State did not reference
Washington at any point after the trial court sustained appellant’s objection. 
The PSI report does not mention Washington.  No other evidence was admitted on
this issue.  We overrule appellant’s third issue.

B.        Motion for New Trial

Appellant filed a timely motion for new trial after
the punishment hearing, arguing that the State’s cross-examination of appellant
about Washington rendered appellant’s plea involuntary.  If he had known the State
would “introduce or comment” about the alleged murder, appellant contends that (1)
he would not have believed that the trial court would consider deferred
adjudication in light of such information; and (2) he would not have pleaded
guilty.  The trial court denied the motion without a hearing. 

Appellant argues in his fifth issue, as he did in his
motion for new trial, that his guilty plea was involuntary.  Appellant argues in
his first issue that the trial court’s denial of appellant’s motion for new
trial without an evidentiary hearing was prejudicial error.  

The purpose of a hearing on a motion for new trial is
to (1) decide whether the cause should be retried; and (2) prepare a record for
presenting issues on appeal in the event the motion is denied.  Smith v.
State, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009).  To deter “fishing
expeditions,” a motion for a new trial must be supported by an affidavit
showing the grounds of attack as a prerequisite to a hearing on that motion.  Reyes
v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993).  Entitlement to
hearing is not an absolute right.  Smith, 286 S.W.3d at 338.  

A hearing is not required when the matters raised in
the motion for new trial are subject to being determined from the record.  Id. 
We conclude that appellant’s motion depends on the development of facts not
determinable from the record, such as the alleged promises made by the State
and appellant’s asserted reliance on those promises in deciding to plead
guilty.      

However, even a defendant who has raised matters not
subject to being determined from the record is not entitled to a hearing on his
motion for new trial unless he establishes the existence of “reasonable
grounds” showing that the defendant could be entitled to relief.  Id. at
339.  The affidavit need not establish a prima facie case or reflect every
component legally required to establish relief; it is sufficient if a fair
reading gives rise to reasonable grounds in support of the claim.  Id.  

We must determine whether appellant’s motion and
affidavits show reasonable grounds entitling him to a hearing on the motion
based on his voluntariness argument.  A guilty plea must be entered into
voluntarily and freely.  See Houston v. State, 201 S.W.3d 212, 217 (Tex.
App.—Houston [14th Dist.] 2006, no pet.) (citing Tex. Crim. Proc. Code Ann.
art. 26.13(b) (Vernon Supp. 2005), and Anderson v. State, 182 S.W.3d
914, 921 n.1 (Tex. Crim. App. 2006) (Hervey, J., concurring)).  We must examine
the entire record when considering the voluntariness of a guilty plea.  Id.
(citing Martinez v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998)
(per curiam)).

A trial court’s substantial compliance with article
26.13 in admonishing a defendant constitutes a prima facie showing that the
defendant’s guilty plea was entered freely and voluntarily.  Id. (citing
Martinez, 981 S.W.2d at 197).  The record shows that the trial court
admonished appellant in accordance with article 26.13, and appellant does not
challenge the sufficiency of these admonitions or appellant’s attestation
during his initial plea hearing that his plea was voluntary.[6] 
Thus, the “heavy burden” shifts to the appellant to show that he was unaware of
the consequences of his plea such that he consequently suffered harm.  Id.


Appellant’s motion for new trial was accompanied by a
letter dated February 23, 2010, in which the prosecutor states: “Included is a
copy of the statement [appellant] made to HPD in regards to the murder of
Freddie Washington.  I don’t actually intend on using this statement nor do I
intent [sic] to bring up the murder during [appellant’s] trial, but I wanted
you to have a copy of the statement regardless.”  Appellant attached his
affidavit to the motion, in which he states that he pleaded guilty only because
the State made this promise.  The motion was accompanied by an affidavit signed
by appellant’s trial counsel, in which trial counsel stated: “At all times
[appellant] vehemently denied commission of the [alleged Washington murder].  I
related the State’s Agreement not to mention the [alleged Washington murder] to
[appellant] before he entered his plea of guilty.”  

Even assuming the truth of these statements,
appellant’s motion and affidavits do not reflect the existence of reasonable
grounds showing that appellant could be entitled to relief.  See Smith,
286 S.W.3d at 339.  Appellant’s voluntariness argument is based on his contention
that the circumstances of his plea changed when the trial court heard questioning
about Washington.  According to appellant, this questioning was tantamount to
evidence that the trial court could not possibly disregard in determining
whether to defer adjudication of appellant’s guilt.  As we have explained, the
State’s questions about Washington do not constitute evidence.  See Kercho,
948 S.W.2d at 37.  The voluntariness of appellant’s plea could not have been
affected by the State’s cross-examination, regardless of whether (1) the State
promised not to reference Washington “for any purpose;” and (2) appellant
relied on that asserted promise in deciding to plead guilty.  Appellant’s
contention fails because the trial court did not hear and could not have relied
upon any objectionable evidence in deciding whether to defer adjudication of
appellant’s guilt.

The trial court did not abuse its discretion in
denying appellant’s motion without granting appellant’s request for a hearing. 
See Buerger v. State, 60 S.W.3d 358, 362–63 (Tex. App.—Houston [14th
Dist.] 2001, pet. ref’d) (in context of ineffective assistance of counsel
claim, appellant failed to demonstrate significance of the complained-of
actions and how, if they occurred, they were deficient or harmed appellant). 
We overrule appellant’s first and fifth issues.




CONCLUSION

Having overruled all
of appellant’s issues on appeal, we affirm the judgment of the trial court.

     








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Brown,
Boyce, and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
These facts are taken from the presentence investigation report (PSI report),
which summarizes the complainant’s allegations as described in the police
report.  The complainant testified at the sentencing hearing that everything
she told the police about the incident was true.





[2]
Despite his guilty plea, appellant disputed the complainant’s allegations
during his presentence investigation interview.  Appellant stated during this
interview that he knows the complainant and has had a sexual relationship with
her for years.  According to his version of the events, the complainant called
him the night of the incident asking for money; she purchased crack with the
money appellant gave her and smoked it at appellant’s apartment.  He claims
that they engaged in consensual sex on the living room couch, and that the
complainant became paranoid from smoking more crack afterward.  He explained
that the complainant suggested that they use the sex toys, which belonged to a
friend of appellant’s who had left them at appellant’s apartment.  After having
sex again, she took her remaining crack and crack pipe and ran out of the
apartment naked.  Appellant denied he kidnapped the complainant, used a knife,
or forced her to have sex against her will.





[3]
The complainant admitted to four theft convictions, two of which were felonies;
two prostitution convictions; one felony forgery conviction; one felony credit
card abuse conviction; and two felony drug possession convictions.





[4]
Appellant also argues that the State “used” this evidence in its “argument to the
court.”  The record contains no such reference in the State’s arguments outside
of the context of the State’s attempt to cross-examine appellant about
Washington.





[5]
Appellant did not object to the questions on the grounds that they constituted
testimony by counsel or assumed facts not in evidence.  See, e.g., Duncan
v. State, 95 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d) (“Prohibiting this kind of interjection of prejudicial hearsay as fact,
in front of the jury, is the purpose of the objections ‘assumes facts not in
evidence’ and ‘counsel testifying.’”) (citing Ramirez v. State, 815
S.W.2d 636, 652 (Tex. Crim. App. 1991)).





[6]
The trial court asked appellant several questions regarding his plea, and
appellant responded that (1) he was making such pleas because, in fact, he is
guilty and the allegations in the enhancement paragraph are true; (2) no one
threatened him or coerced him into making such pleas; (3) he has no history of
mental illness; (4) he was aware of and relinquished his absolute right to a
jury trial and wished to proceed with a presentence investigation; (5) he was
satisfied with the representation of trial counsel, who had explained to
appellant the legal meaning of his signed waiver of constitutional rights,
agreement to stipulate, judicial confession, and plea of guilty, as well as
related admonitions regarding his plea and sex offender registration; (6)
appellant understood the range of punishment associated with aggravated sexual
assault; and (7) he understood that the trial court alone would decide whether
to defer appellant’s adjudication or sentence appellant within the appropriate
range of punishment after receiving the PSI report.  Appellant and his counsel
also signed written plea admonitions.  Appellant confirmed his desire on the
record to continue with his plea after receiving these admonitions.